Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7190
*tom@reevesamodio.com*

*Of Counsel:*

John L. Jacobus
Andrew J. Sloniewsky
Mark F. Murphy
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3901
*jjacobus@steptoe.com*
*asloniewsky@steptoe.com*
*mmurphy@steptoe.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP, )<br><br>Plaintiff, )<br><br>vs. )<br><br>UNITED STATES ENVIRONMENTAL )<br>PROTECTION AGENCY, )<br><br>Defendant. ) | **COMPLAINT**<br><br>**CIVIL ACTION NO.**<br><br>_____ |

Plaintiff Pebble Limited Partnership ("Plaintiff," "Pebble" or "PLP"), by and through the

undersigned counsel, hereby brings this action against Defendant, the U.S. Environmental

Protection Agency ("Defendant" or "EPA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.,* seeking declaratory, injunctive, and other relief to require EPA expeditiously to produce requested documents improperly withheld.

## JURISDICTION AND VENUE

1.  Jurisdiction is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

2.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3.  Plaintiff, PLP, is an Alaska Partnership based in Anchorage, Alaska.

4.  Defendant, EPA, is a federal agency of the U.S. Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  EPA's headquarters are located at 1200 Pennsylvania Avenue, NW, Washington, DC.

## FACTS

### Background: The Pebble Mine Project

5.  The present FOIA action arises in connection with the on-going effort of EPA to pre-judge and block PLP's Pebble Mine project in Alaska.  It has been estimated that if the Pebble Mine project is approved, it would create 15,000 U.S. jobs, contribute $64 billion to U.S. gross domestic product, and generate approximately $18 billion in federal, state and local tax revenues.

6.  On information and belief, EPA secretly and improperly decided in or about 2010 that it would veto the Pebble Mine under EPA's misplaced interpretation of its authority under Section 404(c) of the Clean Water Act, 33 U.S.C. § 1344(c).  EPA made this decision *before* conducting a scientific analysis of the Mine's environmental impact.

7. EPA's decision to proceed without the benefit of established Clean Water Act procedures and subsequent steps to limit PLP – the project's proponent – from meaningfully participating in the process defies requirements that federal agencies conduct their work in impartial and unbiased fashion.

8. Moreover, EPA has engaged to date in a series of non-public and secretive meetings with those dedicated to stopping the project before a permitting process could even start. Those persons include several environmental non-governmental organizations adamantly opposed to the project. Those persons also include several scientists who worked behind the scenes and out of the public's view to advise and develop EPA's deeply flawed "scientific" assessment of the potential impact of the mine. EPA began working on the assessment only *after* it had already decided to veto the Pebble Project. The assessment, a report styled "*An Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska* (EPA 910-R-14-001A) ("Bristol Bay Watershed Assessment"), which cost millions of dollars to prepare, was issued on January 15, 2014.

9. EPA's close collaboration with mine opponents and undertaking of the sham Bristol Bay Watershed Assessment despite having already decided the fate of the Pebble Mine constitutes waste and abuse of public resources.

10. EPA's unlawful association with the foregoing groups is the subject of a suit pending in this Court, filed on September 3, 2014. *See Pebble Ltd. P'ship v. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-TMB. The suit alleges that continued use of these undisclosed and unsanctioned advisory bodies constitutes a violation of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. II § 1, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.* A copy of the filed complaint ("FACA Complaint") is attached hereto as

**Exhibit 1**.  PLP hereby incorporates the factual allegations set forth in the FACA Complaint as if fully set forth herein.

**PLP's FOIA Request**

11.     On or about January 22, 2014, PLP submitted a FOIA request ("FOIA Request") to EPA by certified mail, a copy of which is attached hereto as **Exhibit 2**, seeking access to the following information:

> All documents that contain, describe, discuss, refer to, respond to, or provide any evidence of any communication on the subject of (a) a mining project in the Southwest Alaska commonly called the Pebble project or the Pebble Mine ("Pebble Mine"), (b) the Agency's Bristol Bay Assessment [further defined as the final version and all drafts of the EPA document entitled 'An Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska, and all activities contributing in any way to that assessment], or any other matter connected to the Pebble Mine.

12.     The FOIA Request in particular seeks documents reflecting communications relating to the following EPA officials:

a.  EPA Administrator Lisa Jackson (including all email aliases used by her);

b.  Jeff Frithsen of the Office of Research and Development;

c.  Dennis McLerran, EPA Region 10 (which includes Alaska, Idaho, Oregon, and Washington);

d.  Rick Parkin, EPA Region 10;

e.  Bill Dunbar, EPA Region 10;

f.  Phillip North, EPA Region 10;

g.  John Pavitt, EPA Region 10;

h.  Patricia McGrath, EPA Region 10;

i.  Marcia Combes, EPA Region 10; and

COMPLAINT – FOIA
*Pebble Limited Partnership v. EPA*
Page - 4

8416137 8

j. Tami Fordham, EPA Region 10.

13. The FOIA Request focuses on communications between the foregoing EPA officials and the following outside organizations and individuals:

a. Natural Resources Defense Council;

b. Trout Unlimited;

c. Bristol Bay Native Corporation;

d. Wayne Nastri, anti-Pebble Mine lobbyist formerly of EPA Region 9;

e. Robert Waldrop, Bristol Bay Regional Seafood Development Association;

f. Alan Boraas, Kenai Peninsula College and anti-Pebble Mine author;

g. Geoffrey Parker, counsel for six Alaskan Native tribes;

h. Peter van Tuyn, counsel for Bristol Bay Native Corporation;

i. Shoren Brown, Trout Unlimited;

j. Steve Moyer, Trout Unlimited;

k. Rick Halford, anti-Pebble Mine activist and former Alaska legislator;

l. Joel Reynolds, Natural Resources Defense Council;

m. Taryn Kiekow, Natural Resources Defense Council;

n. Senator Mark Begich;

o. David Ramseur, Chief of Staff to Senator Mark Begich; and

p. Michael Johnson, Legislative Assistant to Senator Mark Begich.

14. The purpose of the FOIA Request was to understand and document (1) EPA's surreptitious decision to veto the Pebble Mine in late 2010, and (2) EPA's non-public and secretive meetings with those dedicated to stopping the project before a permitting process could even start.

15.     On or about March 28, 2014, EPA provided an interim response to the FOIA Request and shortly thereafter provided 18 documents on the FOIA website.   EPA also indicated that an online Bristol Bay reading room would contain "some" additional responsive materials. A copy of EPA's interim response dated March 28, 2014, is attached hereto as **Exhibit 3**.

16.     On or about August 11, 2014, EPA purported to complete its production of documents responsive to the FOIA request by producing its final set of documents on the FOIA website.  Many of these documents were heavily redacted.    EPA's total production on the FOIA website consisted of approximately 559 documents.  Also on or about August 11, 2014, EPA indicated that its response to the FOIA Request was "Closed."  A copy of the closure notice printed out on August 28 is attached hereto as **Exhibit 4**.

17.     In the closeout of its production, EPA provided a chart setting forth a list of documents it was withholding, purportedly on grounds that production of the same would violate the deliberative process privilege.  A copy of the chart provided is attached hereto as **Exhibit 5**.

18.     On or about September 2, 2014, PLP filed an appeal with EPA's Records, Privacy and FOIA Branch, contesting the response as deficient.  A copy of PLP's appeal letter without exhibits is attached hereto as **Exhibit 6.**

19.     On or about September 30, 2014, EPA responded via email to PLP's appeal and predicted an expected "appeal determination on or before October 23, 2014."  A copy of the email is attached hereto as **Exhibit 7**.  As justification for its delay, EPA's email alleges only that there is an "existing backlog of appeals," and does not provide any further detail.

20.     EPA has not specifically alleged the existence of extenuating circumstances to justify its delay, and PLP has exhausted any and all of its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

COMPLAINT – FOIA
*Pebble Limited Partnership v. EPA*
Page - 6

8416137 8

## EPA's FOIA Production Failures

21.     EPA's response to the FOIA Request is marked by four broad failures: (i) an inadequate search for responsive documents; (ii) the concomitant and unexplained omission of known responsive documents; (iii) excessive redactions in the produced documents based on the improper invocation of the deliberative process privilege; and (iv) improper withholding of entire documents, also based on the improper assertion of the deliberative process privilege.

22.     On information and belief, EPA's inadequate response to the FOIA Request is consistent with the Agency's systemic mishandling of other requests. Pending litigation in the United States District Court for the District of Columbia is considering "the possibility that leaders in the EPA may have purposefully attempted to skirt disclosure." Memorandum Opinion at 13-14, *Landmark Legal Found. v. EPA*, No. 12-1726 (D.D.C. Aug. 14, 2013) (Docket No. 39).

### *Inadequate Search & Unexplained Omission of Known Documents*

23.     EPA's search under the FOIA Request was inadequate because it disregarded palpably obvious sources of responsive documents, such as the official and personal email accounts of key decision makers.

24.     For example, former EPA Administrator Lisa Jackson was personally involved in EPA's Pebble Mine activities, having been briefed by Region 10 officials by early 2010, FACA Complaint ¶ 107, and having visited the Bristol Bay area later that year. FACA Complaint ¶¶ 147, 149-54.

25.     Administrator Jackson routinely used both official, including alias official, and home email accounts, as well as a text messaging feature on her phone, to conduct business. FACA Complaint ¶ 61.

26.    EPA's response to date does not include any communications from Administrator Jackson, whether from her official or personal email accounts.   No text messages have been produced.

27.    By way of further example, EPA Region 10 ecologist Phillip North was deeply involved in Pebble Mine for at least eight years, beginning no later than 2005.   North led EPA's Pebble Mine activities, including as a scientist, organizer of the Agency's position, and advocate to anti-Pebble environmental groups and Agency management.   He also described himself as the "lead of the technical team for Bristol Bay", FACA Complaint ¶ 257, and placed himself on "the editorial team to review" the Bristol Bay Watershed Assessment.   FACA Complaint ¶ 396.

28.    North also routinely used his official and home email accounts to advance his anti-Pebble Mine agenda.   FACA Complaint ¶¶ 323, 384.

29.    EPA's response to date does not include any communications from North's home email account.

30.    The response to the FOIA Request contains significant gaps in North's communications, which EPA has implicitly acknowledged by claiming that many documents related to North are missing, based on an alleged failure of North's hard drive.   FACA Complaint ¶ 456.   It is possible, however, that some documents from his hard drive may still be recovered and produced in response to the FOIA Request.

31.    EPA produced limited or no communications between it and multiple non-EPA figures known to have communicated with the Agency, suggesting incomplete searches for responsive records.

32.    For example, on information and belief, EPA produced no communications with David Ramseur, Chief of Staff to Senator Mark Begich.

33.     Similarly, on information and belief EPA produced only one email from Steve

Moyer of Trout Unlimited.

*Further Evidence of Missing Documents*

34.     Several documents produced in response to the FOIA Request themselves refer to

the existence of other responsive documents that have not been produced.

35.     For example, a major anti-Pebble Mine activist emailed North a memorandum

titled "Projects Vetoed Updated." FACA Complaint ¶ 131. The memorandum itself was not

included in EPA's FOIA production.

36.     Other missing documents include presentations and agendas to meetings and

briefings that the produced documents, on information and belief, confirm took place.

37.     For example, communications indicate that anti-Pebble Mine groups presented

scientific reports and information to EPA in December 2010. FACA Complaint ¶ 230. The

presentation from the briefing was not produced despite an email stating that an attendee

distributed the slides to EPA. FACA Complaint ¶ 230.

38.     On information and belief, several anti-Pebble Mine groups briefed EPA's Office

of Wetlands, Oceans, and Watersheds in February 2011. FACA Complaint ¶ 261. Emails

discussing the briefing indicate the existence of at least two documents ("BB EPA

MEMO.w.SCIENCE.02182011final.pdf" and "404(c)_Bibliography_Excel_2007_PC.xls") that

EPA failed to produce. FACA Complaint ¶ 261.

*Redactions*

39.     Of the documents produced, many were heavily redacted, on grounds that

production of the blacked-out portions would violate the deliberative process privilege. A copy

of one such heavily redacted email is attached hereto as **Exhibit 8**.

COMPLAINT – FOIA
*Pebble Limited Partnership v. EPA*
Page - 9

8416137 8

40.     EPA's incomplete production also includes the improper redaction of the recipients' identity in certain communications.

41.     For example, on or about September 7, 2010, Geoffrey Parker emailed to an EPA official an legal analysis on how to "rebut any takings claim" as it related to EPA's premature decision to block the Pebble Mine. EPA redacted the name of the person at EPA who was the email's recipient. FACA Complaint ¶ 183.

42.     On or about November 1, 2010, Shoren Brown of Trout Unlimited emailed an EPA official a news article and brief message implying that the Alaska Peninsula Corporation, which has supported due process for the Pebble Mine project, was motivated by financial gain. EPA redacted the name of the email recipient. FACA Complaint ¶ 223.

43.     On or about January 14, 2011, Geoffrey Parker emailed an EPA official legal analysis of a recent Supreme Court decision relevant to EPA's strategy to use the Clean Water Act to block Pebble Mine. EPA redacted the name of the email recipient. FACA Complaint ¶ 245.

44.     On or about February 7, 2011, Robert Waldrop of the Bristol Bay Regional Seafood Development Association emailed an EPA official to thank him/her for "crafting and getting this issue to front and center." EPA redacted the email recipient. FACA Complaint ¶ 253.

## COUNT I

### (Violation of FOIA, 5 U.S.C. § 552)

45.     Plaintiff re-alleges Paragraphs 1 through 44 as if fully set forth herein.

46.     Defendant EPA is subject to the FOIA requirements. 5 U.S.C. § 552(f)(1).

47.     Defendant EPA is unlawfully withholding records requested by Plaintiff PLP pursuant to 5 U.S.C. § 552.   The records are improperly withheld or redacted under the deliberative process privilege because and in the alternative: (i) they are not pre-decisional; (ii) there is a substantial factual basis for believing certain records evidence government misconduct; (iii) certain documents or parts thereof do not make recommendations or express opinions on legal or policy matters; and (iv) the FOIA Request did not seek inter-agency or intra-agency communications.

48.     More particularly: (i) the documents were no longer pre-decisional once EPA had decided in or about 2010 to preemptively apply Clean Water Act Section 404(c) to block the Pebble Mine; (ii) the FOIA Request sought documents that would shed light on EPA's alleged violations of federal statutes, regulations, or policies in its Pebble Mine activities; (iii) many withheld documents, such as presentations, agendas, meeting notes, and scientific studies, or parts thereof, contain factual material and not only express opinions or recommendations subject to the privilege; and (iv) the FOIA Request sought communications between EPA officials and non-governmental activists which fall outside the deliberative process privilege.

49.     WHEREFORE, Plaintiff PLP respectfully requests that this Court order EPA to: (a) disclose any and all documents wrongfully withheld or redacted that are responsive to the FOIA Request, pursuant to 5 U.S.C. § 552(a)(4)(B); (b) award Plaintiff PLP its attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and (c) provide such additional and further relief to which Plaintiff PLP may be entitled.

Dated:  October __, 2014                    Respectfully submitted:

/s/ Thomas Amodio

_____

Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7190
*tom@reevesamodio.com*

*Of Counsel:*

John L. Jacobus
Andrew J. Sloniewsky
Mark F. Murphy
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3901
*jjacobus@steptoe.com*
*asloniewsky@steptoe.com*
*mmurphy@steptoe.com*